IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JANINE LABORDE,

Plaintiff

v.

JAIME RIVERA-DUEÑO, et al.,

Defendants

CIVIL NO. 09-1368 (JP)

**OPINION AND ORDER**

Before the Court is a motion to dismiss filed by Defendant Jaime Rivera-Dueño ("Rivera") (**No. 10**). Also before the Court is Plaintiff Janine Laborde-Sanfiorenzo's ("Laborde") opposition thereto (No. 11). Plaintiff Laborde filed the instant case alleging claims for violations of the Fifth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"), the False Claims Act, 31 U.S.C. § 3730(h), and supplemental Puerto Rico law claims. Defendant Rivera moves to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's motion to dismiss is hereby **GRANTED IN PART AND DENIED IN PART.**

## I. FACTUAL ALLEGATIONS

Plaintiff Laborde alleges that, beginning in November 2005, she was employed by the Puerto Rico Department of Health ("PRDOH") as Director of the Office of Public Health Preparedness and Response

("OPHPR"). Defendant Rivera is the acting Secretary of PRDOH. The OPHPR is a federally funded program that seeks to upgrade and integrate state and local health jurisdictions' preparedness for and response to bioterrorism, infectious diseases, natural disasters, and other public health emergencies. The OPHPR is funded exclusively through two federal grants: (1) Public Health Emergency Preparedness Cooperative Agreement; and (2) Hospital Preparedness Program.

Plaintiff alleges that, prior to her appointment as Director, funding for the OPHPR had been frozen and the contracts of its personnel had not been renewed due to failure to comply with the milestones and guidelines of the federally funded program. As Director, Plaintiff Laborde insisted upon strict observance of the rules applicable to the federal programs under which OPHPR is funded. As a result, funding was renewed and OPHPR grew significantly. Among other things, Laborde steadfastly rejected attempts at using the budget to assign equipment purchased with federal funds to other areas within the PRDOH without proper justification and resisted efforts to allocate employees whose salaries were paid out of earmarked federal funds to other offices at the PRDOH.

In late January 2009, after Rivera was appointed as Secretary of Health, Laborde learned that Shereeza Rosado ("Rosado"), one of the employees under her supervision whose salary was paid out of federal funds, was to be reassigned to the Office of Information Technology within the Health Department and would not be under her

supervision. Laborde understood that the reassignment of Rosado contravened the terms of the federal grants, and therefore explained to PRDOH's legal counsel that the action jeopardized the continued funding of the OPHPR. Laborde also sought a meeting with Rivera to advise him of the actions that she considered to violate the terms of the federal grants. Rivera did not accept the meeting with Plaintiff. Plaintiff further alleges that Rivera proceeded to reassign Plaintiff's official vehicle, and to move eight computers from the OPHPR office to the PRDOH Office of Information Technology.

Because her attempts to seek resolution of the issues from Rivera and the PRDOH legal counsel had proven unfruitful, Plaintiff then contacted Keesler King ("King"), Senior Public Health Advisor at the Center for Disease Control and Prevention ("CDC") in Atlanta, Georgia. Plaintiff reported to King the irregularities taking place that she believed put the OPHPR's federal grant funding at risk. King promptly arranged a conference call with Sharon Robertson, CDC Grant Specialist and Nealan Austin, Team Lead Grant Specialist. Said call took place on April 7, 2009 at 9:00 a.m.

Later that same day, Defendant Rivera terminated Plaintiff Laborde's employment. Laborde's contract was for a one year term, which had been regularly renewed each year. The contract in force at the time of her termination would have concluded on August 9, 2009. Defendant Rivera stated that Plaintiff's termination was in accordance with clause eight of her contract, which provided for

immediate termination in a case of abandonment or negligent performance of duties. Rivera replaced Plaintiff with José Collado-Marcial, allegedly a convicted felon who is disqualified from handling federal funds.

## II. LEGAL STANDARD FOR A MOTION TO DISMISS

The Supreme Court has established that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. Id. at 570. The United States Court of Appeals for the First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct. at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

## III. ANALYSIS

Defendant argues that Plaintiff's complaint should be dismissed because: (1) Plaintiff has not satisfied the general standards applicable to a cause of action brought pursuant to Section 1983;[1] (2) there is no basis for a Fifth Amendment claim because Defendant is not a federal government actor; (3) Plaintiff's Fourteenth Amendment Due Process claim cannot proceed because she did not have a property interest in her employment; (4) Plaintiff has not alleged facts sufficient to support a claim under the False Claims Act, 31 U.S.C. § 3730 ("FCA"); and (5) Defendant is subject to Eleventh Amendment Immunity. The Court will now consider Defendant's arguments in turn.

### A. Fifth Amendment Claim

Defendant argues that Plaintiff's Fifth Amendment claims should be dismissed because the Fifth Amendment only applies to actions attributable to the federal government, and Plaintiff's allegations do not relate to federal government actions. Plaintiff responds by arguing that it is an open issue whether the Commonwealth of Puerto Rico is considered a state or federal actor for Fifth Amendment

1. Although Defendant's motion includes a part titled "General Standards of Claims raised under 42 U.S.C. § 1983," said discussion is limited to laying out the general standards. Defendant does not develop argumentation asserting that in the instant case some aspect of the general Section 1983 standards is not met by Plaintiff, apart from Defendant's specific arguments regarding the underlying constitutional rights that are alleged to have been violated. Therefore, the Court will proceed in its analysis directly to consideration of the specific constitutional rights at issue.

purposes, and therefore that both the Fifth and Fourteenth Amendments are referenced in the complaint as a prophylactic measure.

Recently, the First Circuit has taken the analytical approach of construing the actions of the Puerto Rico government as actions of a state, which are therefore subject to constitutional limitations via the Fourteenth Amendment. Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 8-9 (1st Cir. 2007) (finding in case involving Puerto Rico government actors that "[a]s plaintiffs do not allege that any of the defendants are federal actors, any Fifth Amendment claim was properly dismissed[]"). In light of the recent First Circuit law applying Fourteenth Amendment analysis to constitutional claims alleging actions attributable to the Commonwealth of Puerto Rico, the Court will follow this approach. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Fifth Amendment claim.

**B. Fourteenth Amendment Due Process Claim**

Under the Fourteenth Amendment, a state is prohibited from discharging a public employee who possesses a property interest in continued employment without due process of law. Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)). In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that she has a legally recognized expectation that she will retain her position. Id. at 24. A legitimate expectation of employment, giving rise to a property interest, is determined by

the employment contract or by state law. Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 15 (1st Cir. 1996).

In the instant case, Plaintiff's employment contract stated that she would be employed for a one year term, concluding on August 9, 2009. Although Plaintiff alleges that her contract was consistently renewed as a matter of course each year, this fact is insufficient to create a property interest in continued employment beyond the conclusion of her one year term. Caro v. Aponte-Roque, 878 F.2d 1, 4 (1st Cir. 1989) ("Puerto Rico does not give persons who hold 'transitory' jobs . . . any expectation of continued employment beyond the time their yearly appointments expire[]").

However, the terms of the contract do appear to provide Plaintiff with a property interest in at least concluding her yearly term. See id. ("a transitory appointment generates a job retention expectancy *only* during the term of the appointment . . .") (internal quotations omitted). Defendant argues that this is not the case because clause eight of the contract provides for immediate removal in a case of abandonment or negligent performance of duties. However, Defendant does not explain how this clause would have been triggered by Plaintiff's actions. Nor does Defendant raise any other applicable state law that would alter or limit the expectation of a one year term. See, e.g., Santana, 342 F.3d at 26 (discussing Governor's power of removal of certain categories of executive branch officials).

On the basis of the arguments presented by the parties, the Court determines that Plaintiff has satisfied her burden of alleging that she had a property interest in her continued employment until the end of the annual term only. Because she was terminated approximately four months prior to the conclusion of the her term, without a hearing or other procedural protection, the Court **DENIES** Defendant's motion to dismiss Plaintiff's Fourteenth Amendment Due Process claim.

**C. <u>False Claims Act</u>**

Defendant moves to dismiss Plaintiff's claim under the anti-retaliation provision of the FCA, arguing that (1) Plaintiff did not engage in conduct protected by the FCA; and (2) there can be no liability for Rivera in his individual capacity because individual supervisors are not an "employer" for purposes of the FCA.

The FCA is a federal statute created to clamp down on widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government. <u>U.S. v. Rivera</u>, 55 F.3d 703, 709 (1st Cir. 1995). The FCA imposes liability, *inter alia*, upon "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3279(a)(1)(A). In order to assist with prevention and enforcement, the FCA permits private parties to bring *qui tam* actions on behalf of the government against those who violate the FCA. 31 U.S.C. § 3730(b).

In addition, the FCA contains an anti-retaliation provision to protect whistle-blowers, which states:

> **Relief from retaliatory actions.--**
>
> **(1) In general.**--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter.
>
> **(2) Relief.**--Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h).

In order to prevail in an FCA retaliation claim, a plaintiff must show that: (1) she engaged in conduct protected under the FCA; (2) the defendant knew that she engaged in such conduct; and (3) the defendant discharged or discriminated against the plaintiff because of her protected conduct. Maturi v. McLaughlin Research Corp., 413 F.3d 166, 172 (1st Cir. 2005).

**1. Protected Conduct**

An employee’s conduct is protected where it involves “acts done . . . in furtherance of other efforts to stop 1 or more

violations of [the FCA].” 31 U.S.C. § 3730(h)(1). This element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation. U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 236 (1st Cir. 2004) (abrogation on other grounds recognized by U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40 (1st Cir. 2009)). The First Circuit defines acts “done in furtherance” of efforts to stop an FCA violation as acts “that reasonably could lead to a viable FCA action.” Id. This definition is used in order to be consistent with the broad interpretation of protected conduct which is urged by the legislative history of the FCA. Id.

In the instant case, Plaintiff alleges that she communicated with a number of individuals within the PRDOH regarding what she understood to be spending of federal grant funds in violation of the terms of the grants. In particular, Plaintiff expressed that because the grant funds were specifically for the use of the OPHPR, using said funds to pay salaries of employees outside of the OPHPR, or to purchase equipment that would be used in other offices outside of the OPHPR, would contravene the terms of the applicable grants.

After Plaintiff’s attempts to rectify the situation internally were unfruitful, she communicated with the Senior Public Health Advisor at the CDC in Atlanta, as well as two CDC Grant Specialists. Although no *qui tam* FCA action resulted, it is fair to say, accepting

the allegations of the complaint as true, that Plaintiff's actions reasonably could lead to a viable FCA action. Given that Plaintiff had proceeded up through various levels of authority attempting to communicate and rectify what she saw as actions that contradicted the existing terms of the grants, Defendant Rivera could have anticipated that the next step would be an FCA action.

In order to create a fully developed *qui tam* FCA action, more specific information would be needed regarding not only noncompliance with the terms of the grant, but also regarding the submission of a claim for the grant funding which misrepresented the OPHPR's compliance. However, in light of the broad standard for acts done in furtherance of efforts to stop an FCA violation, and the applicable motion to dismiss standard, Plaintiff has sufficiently alleged that she engaged in protected conduct.

Defendant has not raised any arguments regarding the second and third elements of the FCA retaliation standard, which require knowledge of the protected conduct by Defendant, and termination of Plaintiff's employment or discrimination against Plaintiff on the basis of the protected conduct. Therefore, the Court **DENIES** Defendant's motion to dismiss Plaintiff's FCA retaliation claim on the basis of failure to allege the elements of the claim.

**2. Individual Liability**

Defendant also argues that Plaintiff cannot bring an FCA retaliation claim against Defendant Laborde in his individual

capacity because there is no liability for individual supervisors under the FCA. Defendant acknowledges that the First Circuit has not specifically addressed this issue, but points to case law from other circuits, as well as one case from the District of Massachusetts, which find that the FCA does not support individual liability.

The cases cited by Defendant are not binding authority in this Court. However, even if the Court were to look to those cases as persuasive authority, they do not dictate the result requested by Defendant. This is so because the opinions cited by Defendant predate recent amendments to the FCA, and rely upon language that is no longer in the current version of the statute. Specifically, the cited cases reason that individuals cannot be liable in an FCA retaliation claim because individuals are not "employers" within the meaning of the statute. See, e.g., Orell v. UMass Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 66 (D. Mass. 2002).

The statute in force at the time of the Orell opinion specified that the retaliation claim was to be brought against an employer. It read,

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment ***by his or her employer*** because of lawful acts done in furtherance of . . .

Id. at 65 (emphasis added) (citing language of 31 U.S.C. § 3730(h) in force in 2002). In 2009, Congress amended the language of 31 U.S.C. § 3730(h) and eliminated the word employer. The relevant

passage now states that it applies if any "employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts . . . ."

In the absence of specific First Circuit guidance holding that individual liability does not exist in FCA retaliation claims, and in light of the fact that the persuasive authority on the issue relies upon an outdated version of the statute, the Court **DENIES** Defendant's motion to dismiss the FCA claim on the basis of a proposed rule precluding individual liability.

**D. Eleventh Amendment Immunity**

Defendant Rivera argues that the Section 1983 and damages claims against him should be dismissed on the basis of Eleventh Amendment immunity. The Eleventh Amendment bars a suit brought in federal court for monetary damages against states, unless the state being sued waives its immunity or consents to be sued. U.S. CONST. amend. XI. Puerto Rico is considered a state for Eleventh Amendment purposes. Metcalf & Eddy v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 939 (1st Cir. 1993). Absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142 (1993). The enactment of Section 1983 did not serve to abrogate the states' Eleventh Amendment immunity. See, e.g., Quern v. Jordan, 440 U.S. 332, 342 (1979). Suits against

officers in their official capacity for damages are tantamount to actions directly against the state. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).

Plaintiff does not refute that the doctrine of Eleventh Amendment immunity applies to damages claims against Rivera in his official capacity. However, Plaintiff argues that the Court should deny the Defendant's request for dismissal on the basis of Eleventh Amendment immunity because this immunity doctrine does not cover claims for injunctive relief applicable only to a defendant's future actions. This assertion is accurate and has been established by the First Circuit. Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005) (". . . Eleventh Amendment immunity does not bar prospective injunctive relief against official-capacity defendants") (internal citations omitted).

In light of the controlling case law regarding Eleventh Amendment immunity, the Court will dismiss Plaintiff's claims for damages against Defendant Rivera in his official capacity. However, Plaintiff's claims for prospective injunctive relief will survive Defendant's Eleventh Amendment immunity challenge. Accordingly, Defendants' motion to dismiss on the basis of Eleventh Amendment Immunity is **GRANTED IN PART AND DENIED IN PART.**

**E. Supplemental Puerto Rico Law Claims**

Because some of Plaintiff's federal law claims survive Defendant's motion to dismiss, the supplemental Puerto Rico law

claims will also remain before the Court. Accordingly, the Court **DENIES** Defendant's motion to dismiss the Puerto Rico law claims.

## IV. CONCLUSION

In conclusion, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Rivera's motion to dismiss. The Court will dismiss Plaintiff's Fifth Amendment claim as well as Plaintiff's claims for damages against Defendant in his official capacity. Remaining before the Court are Plaintiff's claims pursuant to the Fourteenth Amendment Due Process clause and the anti-retaliation provision of the FCA, as well as Plaintiff's supplemental Puerto Rico law claims. The remaining claims are alleged against Defendant Rivera in his individual and official capacity. However, potential relief under the official capacity claims is limited to prospective injunctive relief. A separate judgment will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2010.

s/Jaime Pieras, Jr.
JAIME PIERAS, JR.
U.S. SENIOR DISTRICT JUDGE